UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM LUTZ,

      Petitioner,                        Case No. 4:20-cv-13095
                                             Hon. Matthew F. Leitman

v.

S.L. BURT,

      Respondent.

_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Adam Donald Lutz is a state prisoner in the custody of the Michigan Department of Corrections. In 2014, a jury in the Oakland County Circuit Court convicted Lutz of (1) assault with intent to murder, (2) torture, and (3) unlawful imprisonment. The state trial court then sentenced Lutz to a controlling term of 23 years and 9 months to 80 years' imprisonment.

On November 9, 2020, Lutz filed a *pro se* petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  In the petition, Lutz seeks relief from his state court convictions based on the same claims that he presented to the state courts on direct and collateral review. The Court has carefully reviewed the petition and concludes that Lutz is not entitled to federal habeas relief. Therefore, for the reasons explained below, the Court **DENIES** Lutz's petition and

**DENIES** Lutz a certificate of appealability.  However, it **GRANTS** Lutz leave to proceed *in forma pauperis* on appeal.

**I**

**A**

The charges against Lutz arose from allegations that he handcuffed his elderly mother (Mrs. Gloriann Lutz) in her garage and attempted to asphyxiate her with the exhaust from his truck. The prosecution's theory was that Lutz was angry at the division of property in estate documents that his mother executed.

Prior to trial, Lutz's trial counsel filed a motion to quash the information and dismiss the case.  Counsel argued in part that police lost or destroyed a second written statement that Mrs. Lutz had given to the police. The state trial court denied the motion after a hearing.  It concluded that the statement was accidently lost and not destroyed by the police in bad faith. (*See* 3/12/2014 Hr'g Tr. ECF No. 8-7.)

At trial, Mrs. Lutz testified that Lutz was her adult son, and she said that the two lived together at a house in Waterford, Michigan. (*See* 8/26/2014 Trial Tr., ECF No. 8-10, PageID.886.)  Mrs. Lutz then testified that on August 26, 2013, as she was leaving to run errands, Lutz told her that he would have a surprise for her when she returned. (*See id.*, PageID.897.)  Lutz's demeanor concerned Mrs. Lutz because it raised in her mind Lutz's previously expressed suicidal thoughts. When she returned home, Lutz approached her with several pairs of handcuffs. (*See id.*, PageID.896,

2

904-914.) After first threatening to throw Mrs. Lutz down the stairs, Lutz took her into the garage and handcuffed her to furniture. He told her "You're going to die," turned on the engine of his truck, and left the garage. (*See id.*, PageID.911-915.)

Mrs. Lutz managed to retrieve and a golf club and use it to operate the garage door opener. Lutz came back, closed the garage door, and dragged her to the back of the truck, where he handcuffed her to the trailer hitch. (*See id.*, PageID.930-932.) Mrs. Lutz described how the truck then repeatedly went through a series of remote starts and stops while she was handcuffed to the back of the truck. (*See id.*, PageID.923-939.)

While she was trapped in the garage, Lutz asked Mrs. Lutz to write out various statements, including one expressing her desire to transfer all of her property to him. (*See id.*, PageID.945.) Lutz also returned to the garage several times to express surprise that she was still alive. (*See id.*, PageID.921. *See also* 8/27/2014 Trial Tr., ECF No. 8-11, PageID.1043-1044.)

After some period of hours, Lutz threw the handcuff keys on the floor of the garage. Mrs. Lutz speculated that perhaps Lutz had changed his mind about killing her. (*See* 8/26/2014 Trial Tr., ECF No. 8-10, PageID.954-956.) She used her foot to retrieve the keys and unlocked herself from the truck. She eventually got back inside her house and managed to send an email her granddaughter. Her daughter responded and advised her to go to the next-door neighbors' house. (*See id.*, PageID.955-963.)

3

That neighbor, Margaret Lemos, testified that Mrs. Lutz arrived at her doorstep in the early morning hours. Mrs. Lutz was barefoot, wearing nightclothes, and she was in obvious distress. Lemos called the police. (*See* 8/27/2014 Trial Tr., ECF No. 8-11, PageID.1079-1090.)   Waterford Township Police Officer Scott Lamphere then responded to the scene.  He found Lutz lying in bed asleep when he went inside Mrs. Lutz's house. (*See id*., PageID.1105-1107.)

Mrs. Lutz sought medical attention a few days later from her doctor, Dr. Tilak Garg. Dr. Garg testified that Mrs. Lutz presented with multiple abrasions and bruises. Any carbon monoxide in Mrs. Lutz would have dissipated by the time she was examined, so he did not test for it. (*See id.*, PageID.1069-1079.)

Two expert witnesses also testified at trial: (1) Matthew Covey of the fire department offered testimony regarding the carbon monoxide emission capabilities of Lutz's truck; and (2) Det. Jack Sutherland of the Waterford Police Department offered testimony that the vehicle's remote starter was capable of turning the vehicle on and off. (*See* 8/28/2014 Trial Tr., ECF No. 8-12, PageID.1196-1207, 1215-1218.)

Finally, Marquise Robinson testified that he was an inmate at the Oakland County Jail when he met Lutz. (*See* 8/27/2014, ECF No. 8-11, PageID1109.) Robinson testified that Lutz referred to his mother as an "old bitch," and he made admissions to Robinson about trying to kill her. (*Id.*, PageID.1112-1114.)

Based on this evidence, the jury found Lutz guilty of (1) assault with intent to murder, (2) torture, and (3) unlawful imprisonment. The state trial court them sentenced Lutz to a controlling term of 23 years and 9 months to 80 years' imprisonment.

**B**

Following his convictions and sentence, Lutz filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised a single claim:

> I. Did the trial court abuse its discretion by failing to quash the information in this case under all the circumstances?

(ECF No. 8-20, PageID.1431, 1441.)

A portion of this claim asserted that the state trial court erred when it failed to dismiss the charges on account of the missing written statement from Mrs. Lutz. The remainder of the claim asserted that insufficient evidence was presented at the preliminary examination to warrant the bind-over for trial. Lutz also filed a supplemental *pro se* brief that did not raise additional claims but added facts and arguments to the claim raised in counsel's brief. (*See id.*, PageID.1410-1417.) The Michigan Court of Appeals affirmed Lutz's convictions in an unpublished opinion. *See People v. Lutz*, 2016 WL 757541, at *1 (Mich. Ct. App. Feb. 25, 2016).

5

Lutz then filed a *pro se* application for leave to appeal in the Michigan Supreme Court. The application raised the same claim raised in the Michigan Court of Appeals, and it also raised several new claims:

> I. Ineffective assistance of defense trial counsel for failing to hire a defense forensic pathologist.
>
> II. The Defendant in this case is arguing that the trial court violated his Sixth Amendment rights of the confrontation clause.
>
> III. Mr. Lutz is entitled to a *Crosby* remand for resentencing under *Lockridge* because the trial court engaged in judicial fact finding that increased his sentencing range in violation of his Sixth Amendment rights.
>
> IV. Mr. Lutz request for a court order to reduce or vacate the amount of court costs imposed to reflect the amount of the actual costs incurred by Defendant's trial.

(ECF No. 8-21, PageID.1800.)

The Michigan Supreme Court denied leave to appeal, but it remanded the case to the state trial court for a sentencing inquiry under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). *See People v. Lutz*, 885 N.W.2d 472 (Mich. 2016) (Table). The Supreme Court directed the trial court to determine whether it would have imposed a materially different sentence if, at the time of Lutz's sentencing, the sentencing guidelines had been advisory rather than mandatory. *See id.*

On remand, the state trial court ruled that it would not have imposed a materially different sentence had the guidelines been advisory, and it sustained Lutz's original sentence. (*See* St. Ct. Order Following Remand, ECF No. 8-15.)

Lutz then filed a second claim of appeal in the Michigan Court of Appeals. In that appeal, he raised the following claims:

> I. Did the trial court abuse its discretion in sentencing Defendant under the advisory guidelines when it provided a sentence that was disproportionate to the offense and offender by failing to allow an evidentiary hearing to allow mitigating factors?
>
> II. Was trial counsel and appellate counsel constitutionally ineffective for failing to provide any mitigating information to the sentencing court?

(ECF No. 8-22, PageID.1893.)

The Michigan Court of Appeals affirmed. *See People v. Lutz*, 2018 WL 1403546, at *4 (Mich. Ct. App. Mar. 20, 2018). Lutz then filed an application for leave to appeal in the Michigan Supreme Court, but his application was denied by standard form order. *See People v. Lutz*, 920 N.W.2d 119 (Mich. 2018) (Table).

Lutz next filed a motion for relief from judgment in the state trial court. In his motion, he raised the following claims:

> I. Defendant's Sixth Amendment right to effective assistance of counsel were violated where counsel failed to communicate and present Defendant with an opportunity to accept an off record 5-year plea offer from the prosecution.

7

II. Trial counsel was objectively unreasonable in violating Defendant's Sixth Amendment right to effective counsel where he [failed] to investigate all the prosecution's witnesses and or utilize pre-approved funds for the retention and introduction of expert assistance in forensics and pathology.

III. In collusion the detective bureau and prosecution withheld exculpatory evidence in bad faith in light of trial testimony procured by the accuser the defense was not given all the evidence in preparation before trial.

IV. Subsequent trial counsel had offered ineffective assistance in violating Defendant's Fifth and Sixth Amendment rights where counsel failed to instruct the court upon learning of exculpatory evidence and moving for a mistrial.

V. Trial counsel was objectively unreasonable in violating Defendant's Sixth Amendment rights where he failed to request adverse-inference jury instruction prior to trial.

VI. The prosecution allowed a jail house informant/snitch to give perjured/misleading testimony rendering prosecutorial misconduct in exchange for leniency.

VII. Appointed appellate counsel was ineffective in arguing meritorious issues in post-conviction proceedings violating Defendant's Sixth Amendment rights to effective assistance of appellate counsel.

(ECF No. 8-16, PageID.1325.)

The state trial court denied the motion and concluded that Lutz's claims were procedurally barred under Michigan Court Rule 6.508(D)(3) because they were not raised on direct review. (*See* St. Ct. Order, ECF No. 8-17.) The trial court also denied

a second motion Lutz filed to quash and for reimbursement of assessed costs and fees. (*See* St. Ct. Order, ECF No. 8-18.)

Lutz then filed an application for leave to appeal in the Michigan Court of Appeals. That court denied the application because Luutz "failed to establish that the trial court erred in denying the motion for relief from judgment and for lack of merit in the grounds presented regarding the order denying the motion to quash or modify court ordered reimbursement of fees." (Mich. Ct. App. Order, ECF No. 8-26.)  The Michigan Supreme Court subsequently denied leave to appeal with citation to Michigan Court Rule 6.508(D). (*See* Mich. Sup. Ct. Order, ECF No. 8-25.)

This action followed.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

Lutz's first claim is comprised of the two arguments that his appellate counsel raised on direct appeal: (1) the charges should have been dismissed because a second written statement made by Mrs. Lutz was lost by police, and (2) there was insufficient evidence presented at the preliminary examination to support the bind-over for trial. (*See* Brief on Appeal, ECF No. 8-20, PageID.1442-1449.)  The Court will examine each of these components of Lutz's first claim separately.

## 1

The Court begins with Lutz's claim that the state trial court erred when it did not dismiss the charges against him based on the police losing Mrs. Lutz's second written statement.  The Michigan Court of Appeals considered this claim on direct review and rejected it:

> [W]e conclude that the trial court did not abuse its discretion in denying defendant's motion to quash when the record contains no evidence that Lutz's second written statement was exculpatory, or that the police acted in bad faith by failing to preserve the evidence.
>
> If a defendant is unable to show that missing evidence is material and exculpatory, to demonstrate that his due process rights were violated, the defendant must show that law enforcement's failure to preserve the evidence was the result of bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *People v. Hanks*, 276 Mich. App. 91, 95 (2007). In other words, "[f]ailure to preserve evidentiary material that may have exonerated the defendant will not

10

constitute a denial of due process unless bad faith on the part of the police is shown." *Hanks*, 276 Mich. App. at 95, quoting *People v. Hunter*, 201 Mich. App. 671, 677 (1993), citing *Youngblood*, 488 U.S. at 57 (1988).

There is no evidence that law enforcement acted in bad faith in failing to preserve the second statement. On the second day of the preliminary examination, Lutz testified that she wrote two statements for police. After a recess, the prosecutor said that he asked a lieutenant with the Waterford Police Department to locate the second statement but was told that the statement was not in the file jacket. The prosecutor also contacted Detective Sutherland, who indicated that a second statement had been prepared by Lutz at the police station. Neither the prosecution, nor the defense, had the opportunity to view the statement. Although the loss of the statement may amount to negligence on the part of the police, negligence is not bad faith. *Youngblood*, 488 U.S. at 58.

*Lutz*, 2016 WL 757541, at ** 2-3.

Lutz has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law.  As the Michigan Court of Appeals properly explained, the failure of police to preserve evidence that is only potentially useful for a defendant violates a defendant's due process rights only if the defendant can show bad faith on the part of police. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). Thus, when the state fails to preserve evidentiary material "'of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant,' a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the

exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002) (quoting *Youngblood*, 488 U.S. at 57).

Lutz has not shown that the Michigan Court of Appeals unreasonably concluded that there was no evidence to support bad faith on the part of the police. At the preliminary examination, Mrs. Lutz testified that she wrote out a statement for the police on the morning after the incident at her neighbor's house. (*See* 11/5/2013 Prelim. Exam. Tr., ECF No. 8-3, PageID.624.) She then testified that she wrote a second longer statement later that day at the police department. (*See id.*)  The existence of that second statement was a surprise to counsel, prompting a bench conference and recess. (*See id.*, PageID.625-626.)

When the case was recalled, the prosecutor stated that Lieutenant Lalone had looked through the police file during the break, and he could not find any second written statement. (*See id.*) The prosecutor also phoned Detective Sutherland, who recalled a second statement being written by Mrs. Lutz at the police station, but he also could not find the statement. (*See id.*, PageID.626.) The prosecutor stated that he personally never saw a second statement and was not aware of it until Mrs. Lutz's testimony. (*See id.*)

At that point. Lutz's trial counsel moved for dismissal because he was deprived of the opportunity to read and possibly use the contents of the second statement for cross-examination. (*See id.*, PageID.626-627.) The state court denied the motion and held that counsel could attempt to question Mrs. Lutz about the second statement. (*See id.,* PageID.628.)

Lutz's counsel then asked Mrs. Lutz about her second statement, and she testified that she gave that statement an hour or two after her first statement. (*See id.*, PageID.631-632.)  She explained that she stopped writing her first statement so that the police could take her home to get clothes and shoes, and she wrote a second statement when she returned to the station. (*See id.*, PageID.646-648, 651.)  Counsel then asked Mrs. Lutz about the contents of the second statement, and she responded, "I wrote as identically as I could from the first one ... I wrote all these things that I have been telling you about." (*Id.*, PageID.656.)

After the case was bound over to the state circuit court, Lutz moved to quash the criminal information and renewed his motion to dismiss. The state trial court denied the motion.  It held that:

> As it relates to the request to dismiss the case due to a denial of due process in this matter, the court will state that in order to warrant a reversal on a claim of due process violation a defendant must prove that the missing evidence was exculpatory, or that the – or that law enforcement personnel acted in bad faith.

Since the document is nowhere to be found, it – the court understands that it would be difficult for the defendant to claim that there was exculpatory information in that statement, however, the victim's testimony that her second statement was pretty much the same as the first. What she added, no one knows, other than, of course, the officers who were present during that time. But she – her testimony certainly didn't seem to indicate that she felt her life was not being threatened and it wasn't an intent to kill her at that time. In addition to that, there's been nothing proffered to show that this statement made by the victim was purposefully lost or not provided by law enforcement. The court understands that law enforcement has an obligation to preserve and provide all evidence, both inculpatory and exculpatory, to the defendant. However, as human beings and often with working with other personnel, things do happen, as unfortunate as they are, and I do not find that when something is lost without any other proof of malice or intent, that law enforcement acted in bad faith. So as it relates to your request to dismiss because of a due process violation, the court is denying that.

(3/12/14 H'rg Tr., ECF No. 8-7, PageID.706-707.)

Lutz has not identified any evidence that would suggest that the police purposefully destroyed the second statement. The only evidence in the record are the two police officers' statements that they were unable to locate the second written statement and did not know what happened to it.  That evidence alone does not establish that the police acted in bad faith.  Thus, Lutz is not entitled to federal habeas relief on this component of his first claim.

**2**

The second portion of Lutz's first claim challenges the sufficiency of the evidence presented at the preliminary examination.  Lutz insists that there was insufficient evidence to support the bind-over for trial. The Michigan Court of Appeals considered this claim on direct review and rejected it on the ground that there was sufficient evidence presented at the preliminary examination. *See Lutz*, 2016 WL 757541, at ** 1-2.

Lutz is not entitled to relief on this claim because it is not cognizable on federal habeas review.  A judicial hearing like a preliminary examination is not a constitutional prerequisite to a criminal trial. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Thus, there is no federal constitutional right to a preliminary examination. *See United States v. Mulligan*, 520 F.2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Because Lutz did not have a constitutional right to a preliminary examination, whether sufficient evidence existed to bind him over for trial is a question of state law and procedure that cannot form a basis for federal habeas relief. *See Tegeler v. Renico*, 253 F. App'x 521, 525-26 (6th Cir. 2007); *Mitchell v. Vasbinder*, 644 F.Supp.2d 846, 863 (E.D. Mich. 2009). Lutz is therefore not entitled to federal habeas relief on this component of his first claim.

**B**

In Lutz's second claim, he asserts that he is entitled to resentencing because the state trial court engaged in judicial fact-finding in violation of the Sixth Amendment. (*See* Pet., ECF No. 1, PageID.7, 61-67.)   He also asserts that he was erroneously assessed fees and costs. (*See id.*)

As explained above, Lutz was initially sentenced on October 13, 2014.  At that time, Michigan's sentencing guidelines were mandatory.  Following Lutz's sentencing, the Michigan Supreme Court held Michigan's mandatory guidelines regime was unconstitutional. *See People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). Accordingly, the Michigan Supreme Court remanded Lutz's case under *Lockridge* so that the state trial court could determine whether it would have imposed a materially different sentence if the sentencing guidelines had been advisory. On remand, the trial court determined that it would not have imposed a different sentence. (*See* St. Ct. Order, ECF No. 8-15, PageID.1321-1322.)  Lutz appealed, and the Michigan Court of Appeals affirmed the decision of the trial court. *See Lutz*, 2018 WL 1403546, at *4.

To the that extent Lutz continues to assert that the use of the mandatory guidelines at his original sentencing hearing violated his rights, any error was cured when the state trial court determined that it would not have imposed a different sentence under the advisory guidelines. *See Reign v. Gidley*, 929 F.3d 777, 781-82

16

(6th Cir. 2019) (holding new sentencing inquiry under the advisory guidelines cured constitutional error). To the extent that Lutz asserts it was error for the trial court to reaffirm his sentence based on an erroneous scoring of the advisory guidelines, or that it was based on facts not proven beyond a reasonable doubt, the claim is not cognizable on federal habeas review because it raises questions of state, not federal, law. *See United States v. Booker*, 543 U.S. 220, 232 (2005) (advisory sentencing guidelines do not implicate Sixth Amendment concerns). Indeed, whether advisory sentencing guidelines were correctly scored under state law does not raise a federal question that is cognizable on habeas review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.").

With respect to Lutz's assertion that the state courts incorrectly imposed costs and fees, that portion of his claim is likewise not cognizable in this action. The alleged erroneous imposition of fines, fees, and costs does not present a cognizable issue on federal habeas review. *See Washington v. McQuiggin*, 529 F. App'x 766, 772-773 (6th Cir. 2013); *Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012).

## C

Finally, Lutz's third claim is comprised of the claims that he raised in his motion for relief from judgment in the state trial court. He claims: (1) his trial counsel was ineffective for failing to communicate a favorable plea offer made at

17

the preliminary examination, (2) his trial counsel was ineffective for failing to conduct an adequate pre-trial investigation and call a defense expert witness, (3) the prosecutor withheld his mother's second written statement, (4) substitute trial counsel was ineffective for failing to move for a mistrial on the basis of the missing statement, (5) his counsel was ineffective for failing to request an adverse-inference jury instruction regarding the missing statement, (6) the prosecutor offered false testimony from a jail-house informant, and (7) Lutz was erroneously assessed fees and costs.

Respondent argues that habeas review of these claims is procedurally barred because the state trial court denied relief based on Michigan Court Rule 6.508(D)(3). That rule prohibits a defendant from raising claims on state collateral review that were not raised on direct appeal absent a showing of "good cause" and "actual prejudice." The Court agrees.

Claims that are rejected by a state court on independent state procedural grounds are barred from subsequent federal habeas review absent a showing of cause to excuse the failure to comply with the rule and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this case, the state trial court denied Lutz relief on these claims because he failed to demonstrate good cause or actual prejudice from the failure to raise those claims on direct appeal as required by Michigan Court Rule 6.508(D)(3)(b). The court further determined that Lutz's appellate counsel was

not ineffective for failing to raise the new claims. (*See* St. Ct. Order, ECF No. 8-17, PageID.1365-1366.) The basis for the state court decision therefore constitutes an independent and adequate state procedural ground, resulting in a procedural bar to a review on the merits in this action. *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

To demonstrate entitlement to federal habeas review of the defaulted claims, Lutz must establish either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Lutz has not satisfied either of these alternatives.

Lutz claims that his appellate attorney's ineffectiveness in failing to raise his post-conviction claims on direct appeal constitutes the required cause and excuses his default. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (holding that ineffective assistance of appellate counsel may constitute cause excusing a procedural default). However, an attorney is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Thus, a failure to raise a claim on appeal will generally constitute deficient performance only if the omitted claim is "clearly stronger" than the claims raised on direct review. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Here, Lutz has not shown that any of the omitted claims were "clearly stronger" than the ones raised by his appellate attorney and/or that his appellate counsel had the opportunity to raise the claims on direct appeal.

First, with respect to the claim that Lutz's trial counsel was ineffective for failing to communicate a plea offer, Lutz asserts that the factual basis for that claim arose at the preliminary examination. He says that during an off-the-record moment, the prosecutor approached his counsel and offered a favorable plea offer that included a five-year sentencing agreement. Lutz claims that his counsel summarily rejected that offer without first consulting him. And he insists that his counsel should have consulted him and advised him to accept the offer. (*See* Mot. for Relief from Judgment, ECF No. 8-10, PageID.1332-34.)

Lutz has not shown that his appellate counsel was ineffective for failing to raise this claim.  Lutz has not identified any evidence in the record that his appellate counsel was aware, or reasonably could have discovered, the factual basis for this claim. There is no mention of any plea offer or negotiation in any of the transcripts. If Lutz personally heard the offer being made off the record, as he claims, then he could have informed his appellate counsel of the incident during his direct appeal. But Lutz has not pointed to any evidence he ever did so. In fact, Lutz filed a supplemental *pro se* brief during his direct appeal in which he accused his counsel of failing to raise certain arguments, but nowhere in that *pro se* brief does he claim

that he informed his appellate counsel of this particular claim. (*See pro se* Supp. Brief, ECF No. 8-21, PageID.1852.)

Moreover, Lutz claims that his trial counsel's failure to discuss this plea offer with him was the reason for the breakdown in their relationship that caused counsel's withdrawal and the appointment of substitute counsel. But the record appears to show that counsel moved to withdraw after Lutz refused to abide by counsel's instructions not to talk with other prisoners about his case. At no point in the motion to withdraw hearing did Lutz ever claim that he was upset at his trial counsel for failing to discuss a plea offer with him. (*See* 5/14/2014 Hr'g Tr., ECF No. 8-8.) Accordingly, Lutz has failed to demonstrate that his appellate counsel performed deficiently for failing to raise this claim.

Next, Lutz has not shown that his claim that his trial counsel was ineffective for failing to adequately prepare for trial was clearly stronger than the claims raised on direct appeal. Lutz says that his trial counsel failed to adequately investigate the prosecution witnesses and failed to hire a defense expert regarding carbon monoxide poisoning. But Lutz has not identified any part of the record that could establish that his trial counsel was inadequately prepared to cross-examine the prosecution witnesses. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (appellate counsel not ineffective for failing to raise "merely conclusory" allegations of ineffective assistance of counsel that lacked evidentiary support). Nor has Lutz identified a

particular expert witness who would have testified favorably in his defense.  And a habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). For all of these reasons, Lutz has failed to demonstrate that this claim was clearly stronger that the ones raised on direct review.

Lutz next asserts that his substitute trial counsel was ineffective for failing to renew the claim regarding the missing statement by his mother. Lutz has not shown that this claim was improperly omitted by appellate counsel. Appellate counsel did, in fact, assert that the charges should have been dismissed based on the missing statement. (*See* Brief on Appeal, ECF No. 8-20, PageID.1441-1443.)  And Lutz has failed to explain why a claim based on the failure of substitute counsel to renew the issue was stronger than the one raised by counsel on appeal arising out of the same statement.

Lutz has also not established that his jury instruction claim was clearly stronger than his other direct appeal claims. Lutz claims that his counsel should have requested a jury instruction directing the jury to infer that the missing statement contained exculpatory information. But Lutz has not shown such an instruction was warranted. An adverse-inference instruction is required under state law only when "the prosecutor acted in bad faith in failing to produce the evidence." *People v. Davis*, 503 N.W.2d 457, 463 (Mich. Ct. App. 1993). But because the state court

concluded no bad faith occurred, Lutz has not shown that this claim was clearly stronger than the ones raised by appellate counsel on direct appeal.

Finally, Lutz has not established that his appellate counsel was ineffective for failing to raise a perjured testimony claim. Lutz claims that testimony from a jail house informant (Marquise Robinson) was false because Lutz never made the allegedly incriminating statements that the informant attributed to him. (*See* ECF No. 1-1, PageID.117-118.) But Lutz has not shown that this claim was clearly stronger than the ones presented on direct review. To prevail on a claim that his conviction was obtained with false evidence, Lutz must show that (1) the statements in question were actually false, (2) the statements were material, and (3) the prosecutor knew they were false. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). Apart from speculation and his own denial of making the incriminating statements, Lutz has not presented evidence that Robinson's testimony was actually false or that the prosecutor knew it to be false.

Under these circumstances, because none of the post-conviction claims are "clearly stronger" than the ones presented on direct review, Lutz has failed to establish that his appellate attorney rendered ineffective assistance during Lutz's direct appeal. Thus, Lutz has not demonstrated cause to excuse his procedural default.

The final exception to the procedural default rule allows a federal court to review a claim where a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). A claim of actual innocence must be supported with "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Lutz has not presented any such evidence here. Lutz has therefore failed to demonstrate an entitlement to review of the defaulted claims.

## C

## III

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a certificate of appealability under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

24

The Court **DENIES** Lutz a certificate of appealability because jurists of reason could not debate the Court's conclusion that Lutz failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Lutz a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Lutz's claims, an appeal could be taken in good faith. Therefore, Lutz may proceed *in forma pauperis* on appeal.

### IV

Accordingly, for all the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Lutz's petition for a writ of habeas corpus (ECF No. 1), (2) **DENIES** Lutz a certificate of appealability, and (3) **GRANTS** Lutz permission to appeal *in forma pauperis.* **IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  December 20, 2022          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 20, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126